TOOTLE ET AL., APPELLANTS, v. COOK ET AL., AP-
PELLEES.

4    111
5    527
4    111
27s   345
4    111
17    12

1. PRACTICE.

It is error in an action against two partners to render judgment against
the plaintiffs and in favor of both defendants where the default of
one of the defendants has been entered and has not been vacated.

2. PRINCIPAL AND AGENT.

A principal is not bound by the acts of his agent unless they are done
within the scope of his authority.

3. NOTICE.

In order that a principal may be affected by his agent's knowledge, the
knowledge must be acquired while he is agent, and must pertain to
the business in which he is authorized to act.

4. AGENCY—BANKERS.

A bank which is the agent of a party for the collection of a draft has
no power, without special authority, to compound the indebtedness,
release the debtor, receive anything except money in payment, or
to do anything whatever which would operate to change the rights
of the parties.

5. PARTNERSHIP—DISSOLUTION.

A contract of dissolution between partners is binding *inter se*, but rights
of third parties which had vested before the dissolution, cannot be
affected by it without their consent.

*Appeal from the District Court of Pueblo County.*

Messrs. BETTS & VATES, for appellants.

Mr. JAMES McKEOUGH, JR., and Messrs. DIXON & DIXON,
for appellees.

THOMSON, J., delivered the opinion of the court.

Kate Tootle, W. E. Hosea, H. W. Wheeler and Joshua
Motter, copartners as Tootle, Hosea & Co., merchants at St.
Joseph, Missouri, brought their action against the defendants,
John Davis and Thomas W. Cook, copartners as Cook &
Davis, merchants, doing business at Trinidad and El Moro,
Colorado, to recover a balance due from the defendants for

goods sold and delivered. Default for want of appearance was duly entered against the defendant Davis. Cook answered separately, and, as between him and the plaintiffs, the issues were duly joined. A trial was had, and notwithstanding the prior default against Davis, which had not been vacated, but remained in force, judgment was rendered against the plaintiffs and in favor of both defendants This error, which, of itself, would demand a reversal of the judgment, is so manifest that it was probably the result of oversight. But the record presents other questions, which, for the purposes of justice between the parties, require determination. The only defense to the action was made by the defendant Cook. The evidence shows the sale and delivery of the goods, and an unpaid balance. As to this there is no controversy in the argument.

The defense set up by Cook is, that on March 5, 1888, himself and Davis were copartners under the firm name of Cook & Davis; that on that day the copartnership was dissolved by mutual consent; that in the dissolution, for a valuable consideration, Davis assumed the firm's indebtedness to plaintiffs; that the plaintiffs were promptly notified of the dissolution, and of the assumption by Davis of the indebtedness; that after such notice the plaintiffs, on April 27, 1888, made their draft on Cook & Davis for the balance then due, payable to their own order, five days after sight; which draft was sent to the First National Bank of Trinidad for collection, and was on April 30, 1888, accepted by Davis; that such acceptance was received by plaintiffs in full satisfaction and discharge of the indebtedness; and that on April 27, 1888, the plaintiffs, for a valuable consideration, entered into a contract with Davis, by which, without the consent of Cook, they extended the time of payment.

It is shown by the evidence that the defendants, during the existence of their partnership, conducted two stores— one at Trinidad, managed by Davis, and one at El Moro, managed by Cook; that this indebtedness was contracted on account of the Trinidad store; and that, by the terms of their

agreement of dissolution, Davis assumed the debts at Trinidad, and Cook those at El Moro. It is also in evidence that immediately upon the dissolution Cook sent to the plaintiffs, by mail, a notice of that fact, and subsequently paid plaintiffs, by his individual check, for bills of goods purchased by him for the El Moro store, which, after the dissolution, was conducted by him in his own name; that Davis afterwards corresponded with the plaintiffs, and talked with their traveling agent, and told them that the partnership was at an end; and that about June 30, 1888, Davis became insolvent. The plaintiff, Wheeler, who had charge of the correspondence and had exclusive management of all the claims and collections of the plaintiffs, denies that any notice of the dissolution was ever received by the plaintiffs; but, from the fact that orders for goods were subsequently received from Cook individually, and from some other circumstances, they inferred that a dissolution had taken place. There is no evidence that plaintiffs were ever advised that Davis had assumed this, or any indebtedness of his firm.

On April 9, 1888, the plaintiffs received the following letter:

"Trinidad, Colo., April 3rd, 1888.

"Tootle, Hosea,

"*Gents:*—Your statement to hand yesterday and find correct, if you be kind enough to wait until the 25th of this month, will remit, as we had contract with the railroad company for ties and haven't received our money yet. You can charge interest and we are willing to pay it.

We are truly,

Cook & Davis,

By J. D."

To this letter the plaintiffs replied as follows:

"Cook & Davis, Trinidad, Colorado.

"*Gents:*—In reply to yours of the 5th inst. asking us to wait on you until the 25th of April for balance past due on our account, saying you would pay interest from the time after maturity of bills, we will cheerfully comply with your

request.    Please let your payment come promptly on April 25th, and much oblige,

Yours truly,

TOOTLE, HOSEA & CO."

On the 27th of April, 1888, the indebtedness being unpaid, the plaintiffs drew on Cook & Davis at five days sight for $2,618.94, the amount due, and sent the draft to the First National Bank of Trinidad for collection.    The bank presented the draft to Davis, who accepted it individually.    It was not presented to Cook, because he was absent at El Moro. The bank retained the draft, and payments were made upon it from time to time by Davis, which were by the bank forwarded to plaintiffs as payments on the draft, without stating by whom made.    The bank had knowledge of the dissolution.    After the draft was sent, several letters were written by plaintiffs to Cook & Davis, urging its payment. Subsequent to the dissolution, Cook dealt with the plaintiffs in his own name, and paid them for goods purchased, by his individual check.    The letter from Cook & Davis, asking time, and promising interest, was written by Davis without the knowledge of Cook; and he knew nothing of plaintiffs' reply, or of the draft, or its acceptance by Davis.    After he had terminated his partnership relations and sent a notice of the dissolution to plaintiffs, Cook gave the subject of this indebtedness no further attention.

The contention on behalf of defendant Cook is, First: That the bank with knowledge of the dissolution of the firm, by presenting the draft to Davis, taking his individual acceptance, and failing to report it to the plaintiffs as dishonored, made the draft its own, and became liable therefor to plaintiffs; and that the indebtedness of Cook & Davis was discharged by Davis' obligation to the bank;

Second: That the bank was the agent of the plaintiffs, so that its acts and its knowledge in the premises were the acts and knowledge of plaintiffs, and bound them; and that therefore when the bank, with knowledge of the dissolution, took

the individual acceptance of Davis, that act operated to release Cook from any further liability;

Third: That the agreement of the plaintiffs giving Davis an extension until April 25th in which to pay the debt, in consideration of the promise of Davis to pay interest on the amount, was a discharge of Cook, on the hypothesis that by the dissolution of the partnership and the assumption by Davis of the debt, the relation of principal and surety was created between Cook and Davis;

Fourth: And based upon the same hypothesis, that making the draft payable five days after sight was such valid extension to the principal debtor as to relieve the other.

It is true that the bank to which the draft was sent might have been so negligent in the performance of the duties with which it was charged as to incur a liability to plaintiffs; and if, through its negligence in making the collection, or not reporting to plaintiffs matters concerning it, which they were entitled to know, the debt had been lost, the amount would have been recoverable against it by the plaintiffs as damages; and after payment of the amount by it to them, their claim against the defendants would have been extinguished. The bank would in such case be subrogated to the plaintiffs, and their controversy with the defendants would be transferred to the bank. But, until payment of the claim, or a disposition of it satisfactory to the plaintiffs, defendants remained the debtors of the plaintiffs, and liable to them for the debt. Defendants purchased the goods; by the purchase plaintiffs became entitled to demand payment from them of the purchase price, and no act of theirs, or of the bank, to which plaintiffs were not parties, or to which they did not give their assent, could divest them of that right.

There is no question that the bank was the agent of plaintiffs, and hence the argument that when it took the individual acceptance of Davis upon the draft against Cook & Davis, with knowledge that the firm of Cook & Davis had ceased to exist, the plaintiffs were bound by its act, the effect of which, as urged, was to discharge Cook. The mere taking

of the acceptance of Davis alone would probably not have the effect claimed; but it is needless to consider that question here. A principal is not bound by the acts of his agent, unless they are done within the scope of his authority, in the transaction of the business of his principal. So also, in order that a principal may be affected by his agent's knowledge, the knowledge must be acquired while he is agent, and must pertain to the business in which he is authorized to act. The bank was the agent of plaintiffs for the collection of the draft. No authority is shown in the bank, except the general authority which accompanies the forwarding to it of an instrument for collection. Under that authority it could collect the money due, and if it had done so the debt would have been discharged, notwithstanding the bank might have failed to forward the amount to the plaintiffs. But it had no power to compound the indebtedness, or release a debtor, or receive anything except money in payment, or do anything whatever which would operate to change the rights of the creditors, or the liability of the debtors. Under this general authority it could present the draft for acceptance in accordance with its terms, but it could not bind the drawers by receiving a defective acceptance. The knowledge, therefore, which the bank had of the dissolution, or its act in taking the acceptance of one drawer and not of the other, or any other act outside of the general authority which it had, cannot for a moment affect the prior relations between the defendant partnership and the plaintiffs. Whether under any circumstances a retiring partner has the rights of a surety against creditors, is not, as we think, very important in this case. The authorities are not unanimous upon this question. Counsel claim that, by the terms of the agreement of dissolution, Davis became the principal debtor, and Cook the surety; and, applying to them the law of principal and surety, counsel argue that the plaintiffs by their agreement, in consideration of interest to be paid, extending to Davis, the principal debtor, the time in which payment of the claim might be made, released Cook, the surety. This reasoning

is seriously faulty in that it assumes a state of facts which does not appear in the record.   First: Even the authorities which hold to the doctrine that such relationship may be created so as to affect creditors, confine it to cases in which creditors actually know of the fact that the continuing partner has assumed the debts.   There is no evidence in the record that the plaintiffs had any knowledge whatever of the assumption by Davis of any debts of Cook & Davis. Second: The extension was given not to Davis, but to Cook & Davis; and it was in consideration that they, and not he, would pay interest for the delay, that it was granted.   The same observations apply to the draft.   It was payable five days after sight, and not at sight.   It therefore operated as a further extension.   But the draft was made upon Cook & Davis, and not upon one of them.   The facts being thus, we may go to the full extent claimed by counsel, and concede that plaintiffs had actual knowledge not only of the dissolution, but that Davis had assumed the debts, and so became a principal debtor, and that Cook was invested with all the rights of a surety; still the record discloses nothing on the part of the plaintiffs that would tend to impair any claim which they had against the defendants jointly.

These goods were sold on the credit of the firm, and the firm comprised both the defendants.   Nothing which took place between themselves after the sale could alter the obligation which they had contracted.   Their contract of dissolution was binding *inter se*, and each could enforce it against the other; but no rights of third parties which had vested before the dissolution could be at all affected by it, without their own consent.   Where one of the partners takes the assets and assumes the indebtedness, creditors may, of course, if they choose, become parties to the agreement; and if they do, for a consideration, they will be bound by it, and cannot sue the retiring partner.   There is in such case something like a novation.   The firm debt is discharged, and a new one created.   The assent to the agreement need not be express. It may be inferred from acts which cannot be explained

otherwise; and when the assent is found, according to some of the authorities, slight evidence of consideration will suffice to sustain it. Still there must be an assent, either direct, or deducible from some act which clearly indicates that purpose. The rights of a creditor against a partnership must be voluntarily relinquished, or they remain. We search the record in vain for any such assent, or for evidence of any act from which it could be inferred that the plaintiffs ever intended to relinquish their claim against either defendant. They consistently and continuously asserted their demand against the firm, and never, either in their correspondence with the parties themselves, or in any direction to the bank, indicated in the slightest degree any purpose to waive any of their rights as they originally existed. Upon the evidence the judgment should have been for the plaintiffs against both defendants, and because it was erroneously given otherwise, it will be reversed.

*Reversed.*