Thomson, J.,
delivered the opinion of the court.
This is an action for personal injuries. The complaint charges that the plaintiff, Deane, was employed by the defendant, The Roaring Fork Electric Light and Power Company, to work at and near its machinery, pipes and valves, etc., through which the water of the company was transmitted; that the plaintiff, in the usual course of his employment, was engaged by the direction of the defendant in trying the works to ascertain whether the joints and connections were sufficient, and was working at or near the hydraulic valve which was part of the machinery; that this valve was guaranteed by the defendant to the plaintiff to be capable of a cold water pressure of five hundred pounds to the square inch; that the valve was unsafe, defective and insufficient, as the defendant at the time knew or ought to have known; that the defects in the valve were hidden from view, so that the plaintiff did not and could not know its unsafe condition, but relied wholly upon its external appearance and the guaranty of the defendant; that while plaintiff was working near the valve, and while it was sustaining a pressure of only three hundred and twenty-six pounds to the square inch, it. burst with great violence, causing severe and permanent injury to the plaintiff; that the defendant was negligent in providing and using, and suffering to be used, the unsafe and imperfect valve; and that the injuries suffered by the plaintiff were the result of its negligence.
*523 The answer denies negligence and the insufficiency of the valve; avers care in its selection; a want of knowledge or the ability to obtain knowledge that it was defective; and contributory negligence on the part of the plaintiff. When the evidence in behalf of plaintiff was introduced, a motion for a nonsuit was made and allowed. The following is all the evidence bearing upon the solitary question in the case: The plaintiff was a carpenter, contractor and builder; prior to the accident he had been working for the company about five months ; he was first employed to construct its dam, and afterwards he took a contract to make window frames for its power house; at the time of the accident he was assisting in making a test of the valve, by order of Mr. William G. Coffin, who had charge of the construction of the pipe line, and was the company’s superintendent and hydraulic engineer. Joseph Mueller, who was operating a foundry in Aspen, and had experience in the manufacture of valves, saw the valve in question after it was put in place, and stated, in the hearing of the plaintiff, that the iron in the valve was too light. The plaintiff reported what Mueller had said to Mr. Doolittle, who was superintendent of the construction of the wood work, and under whose direction the plaintiff worked upon the power house. Mr. Doolittle replied that the valve had been made specially for that work, had been tested to five hundred pounds, and would stand that .pressure with safety. Mr. Mueller, on the witness stand, stated that, in his judgment, the valve was not sufficient for the pressure it was designed to stand. He also stated that no flaw or defect in the workmanship of the valve could be seen; that so far as visible signs were concerned, it was a perfect piece of work; that to a person who had not special technical knowledge upon the subject, there was nothing in the appearance of the valve to cause any alarm or uneasiness. He made no calculation'for the purpose of determining whether it was strong enough, but said that its insufficiency could be'seen by a man who was familiar with making valves and seeing valves made. He further stated that such a valve might withstand *524 a proper test, and upon a subsequent test, or upon actual use, its insufficiency might become apparent for the first time.
The question of contributory negligence is not in the case. The only question which we are called upon to determine is whether there was sufficient evidence of negligence on the part of the defendant to demand the submission of the case to the jury. The duty which a master owes to his servant requires the exercise by him of reasonable care and caution in the selection of machinery and appliances to be used in carrying on the business in which the servantis employed. The amount of care required depends in a considerable degree upon the character of the machinery selected and the danger attendant upon its use; and if, through the master’s failure in the exercise of such precautions as the circumstances of the particular case demand, unsafe machinery is procured, and as a consequence, the servant, without fault of his own, suffers injury, the master is liable. In an action for the injury the burden is upon the servant to establish such negligence of the master as would authorize a recovery. Negligence is not presumed; on the contrary, the presumption is that the master exercised the care which the circumstances required, and did whatever was reasonably necessary to secure the safety of the servant. It is not sufficient to prove that the injury resulted from defective or insufficient machinery; it must also appear that the master knew, or by the exercise of proper care might have known, that the machinery, by reason of its construction or its condition, was unsafe. In an action by the servant for a resulting injury, the master goes into the trial with the advantage of this presumption in his favor, and, unless evidence is introduced which has a tendency to overthrow it, there is nothing for the jury to pass "upon. The foregoing is a statement of some general and well established principles. Wells v. Coe, 9 Colo. 159; Murray v. D. & R. G. R. Co., 11 Colo. 124; Wood’s Master and Servant, sec. 382.
It remains to us to apply these principles to the evidence before "us. The injury to the plaintiff was occasioned by the bursting of the valve, and the evidence tends to prove that’ *525 the reason why it hurst was that the iron of which it was east was not sufficiently thick to withstand the pressure which was applied to it. The only negligence charged, or endeavored to be shown, consisted in the providing and attempted use by the defendant of a valve which was not equal to the work which was to he exacted of it; and if the defendant is liable in this action, it is either because it had actual knowledge of the insufficiency of the machine, or because it failed in something which ordinary prudence required to be done by which its insufficiency would have been revealed; and it devolved upon the plaintiff to intro! duce evidence of some fact showing such knowledge or such failure, or from which it might be reasonably inferred. The evidence is that there was nothing in the appearance of the valve itself to indicate to one without special technical knowledge upon the subject that it was in any way defective, or was not amply sufficient for the purpose for which it was designed, although its insufficiency could be seen by a man who was familiar with making valves and seeing them made. There was no evidence that any officer or agent of the company possessed the qualifications shown to be necessary for the detection, otherwise than by actual test, of the inability of the valve to answer the purpose for which it was intended; and it affirmatively and clearly appears that, except to an expert, there was nothing in the appearance of the valve from which it'could be known or suspected that it could not endure the test which was applied. The defendant is therefore not chargeable with knowledge, or with negligence in not obtaining knowledge, that the valve was unsafe or insufficient, by reason of anything about it which was visible.
But it might be said that the duty which the defendant owed to its employees required that before acceptance of the valve, and putting it into use, it should have been subjected to such tests as were necessary to an ascertainment of its fitness or want of fitness for the purpose to which it was pror posed to apply it. Such, in effect, is the position assumed by the plaintiff’s counsel, if we understand their argument; *526 and, -if for present purposes, we admit the correctness of the proposition, it becomes necessary to inquire in what manner, if at all, it affects the ease before us. The presumption in the defendant’s favor being that everything Avhich the law required to be done by it in the discharge of its duty to its employees was done, it is presumed that all necessary tests were made, and that they gave no indication of any defect or insufficiency in the valve. Unless some evidence incompatible with this presumption was introduced, it remained, and no evidence upon the subject could-be required of the defendant. Direct proof was not essential. It Avas not necessary to show that no test had in fact been made. Proof of any fact or condition inconsistent with the supposition of a test would suffice. If, for instance, the evidence had been that the valve, as it was constructed, must have given way upon the first appropriate test, it might justly be inferred that it had not been properly tested, because the test would have disabled or destroyed it, and the defendant would then have been put upon its proof. But there was no evidence of that kind, nor any evidence which tended in that direction. Exactly to the contrary, the only witness who touched the subject testified that it might have withstood tests properly made, and its final failure not have occurred until it was actually used. This evidence left the presumption unshaken.
What effect Mueller’s opinion of the valve, if it had come to the defendant’s knowledge, would have had in the way of imposing upon it the duty of further investigation, it is not necessary to inquire, because there is no evidence that what Mueller said was ever communicated to the defendant. The plaintiff reported it to Doolittle, who was one of the defendant’s employees, but it appears that the department of service in which Doolittle Avas engaged was entirely disconnected from that which had control of the pipes and valves. He had charge of the wood Avork, and superintended the construction of the power house, but had nothing to do with placing or testing machinery, so that the communication to him of what- had been said concerning this valve was not *527 notice to the defendant, and what he said does not bind the defendant. A principal is not bound by an agent’s acts, or affected by his knowledge, unless the acts are done, or the knowledge acquired, in connection with the particular business in which the agent is authorized at the time to act. Tootle v. Cook, 4 Colo. App. 111.
The plaintiff utterly failed to show either that the defendant had knowledge of the weakness of the valve, or that by the exercise of such reasonable care as the law exacts in cases of this kind, it might have discovered it. There was therefore no question of fact for the jury to pass upon, and in allowing the motion for nonsuit the court simply performed a duty which the law devolved upon it.
The judgment will be affirmed.

Affirmed.